## In re Anonymous No. 39 D.B. 77

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania

UNKOVIC, *Chairman*, January 9, 1979—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board), submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## I. HISTORY OF PROCEEDINGS

On September 19, 1977, a petition for discipline was filed by the chief disciplinary counsel. The petition contained two charges:

### CHARGE I
Disciplinary counsel alleged that respondent had violated Disciplinary Rules of the Code of Professional Responsibility as follows:

(a) D.R. 3-102(A)—dealing with the sharing of legal fees by a lawyer or a law firm with a non-lawyer; and,

(b) D.R. 3-103(A)—dealing with the formation of a partnership between a lawyer and a non-lawyer, if any of the activities of the partnership consist of the practice of law.

### CHARGE II
Disciplinary counsel alleged that respondent had violated Disciplinary Rules of the Code of Professional Responsibility as follows:

(a) D.R. 1-102(A)(4)—dealing with conduct involving dishonesty, fraud, deceit or misrepresentation;

(b) D.R. 6-101(A)(3)—dealing with neglect of a legal matter entrusted to a lawyer;

(c) D.R. 7-101(A)(2)—dealing with the intentional failure to carry out a contract of employment entered into with a client for professional services;

(d) D.R. 9-102(A)—dealing with the preservation of the identity of funds and property of a client;

(e) D.R. 9-102(B)(3)—dealing with the maintenance of complete records of funds, securities and properties of the client coming into the possession of the lawyer, and rendering appropriate accounts with regard thereto; and,

(f) D.R. 9-102(B)(4)—dealing with prompt payment or delivery to the client of funds or other properties in the possession of the lawyer which the client is entitled to receive.

The substance of Charge I is that respondent entered into a written agreement with [A], a non-lawyer, to practice law and that Mr. [A] and respondent shared legal fees.

The substance of Charge II is that in representing the [Bs] with regard to a claim of the Pennsylvania Department of Welfare, respondent failed to make payment of money to the department that was given to him by the [Bs] for that express purpose. The check in the amount of $1,800 bore a notation that it was issued for "Settlement of Pa. Ass't. and recording of property deeds." The hearing committee found that respondent's assertion that the $1,800 received from the [Bs] was a fee for settling the third party action was not supported by the record. In fact, respondent made restitution to the [Bs] of the $1,800. The whereabouts of the money from its receipt in 1973 until reimbursement in 1975 was "shrouded in mystery" as found by the hearing committee.

A hearing was held on December 8, 1977, before hearing committee [ ], the committee consisting

of [ ], Esq., chairman, [C], Esq., and [ ], Esq. On June 30, 1978, the hearing committee in its report recommended that respondent be given a private reprimand by the disciplinary board, with or without probation, as the board may determine. A dissenting opinion was filed on July 10, 1978, by committee member [C], Esq., recommending a short suspension. Subsequently, a brief and exceptions were filed by disciplinary counsel; respondent filed a brief opposing exceptions. Oral argument was requested by petitioner because of certain statements made in respondent's brief. Oral argument was held on August 24, 1978, before a panel consisting of Dennis C. Harrington, Frank J. McDonnell and Alexander Unkovic, Chairman. At the time of the oral argument, the panel requested that both respondent and disciplinary counsel file supplemental briefs. Counsel for both parties complied with the request.

## II. DISCUSSION

The hearing committee reviewed the facts and discussed them carefully and accurately in its report.

In reference to charge I, the hearing committee found respondent guilty of violation of D.R. 3-103(A) and D.R. 3-102(A) as charged. Respondent did not challenge the factual testimony presented by petitioner as to how the office was operated while the men worked together. Respondent permitted Mr. [A] to assume and perform the professional functions of a lawyer, and fees that were earned for professional service were divided. There was, however, disagreement as to the purpose of the payments to Mr. [A]. Mr. [A] claimed that he

was a full partner and entitled to share the fees, but respondent claimed that payments were on account of the $150 per week draw. The office arrangement did, in effect, constitute a partnership and there was an improper sharing of fees as found by the hearing committee.

This case is rather unique. Mr. [A], the non-lawyer, in late 1974, entered into an oral arrangement to work with respondent in his law office, which was in respondent's home. Mr. [A] was also living there for a short time.

In January of 1975, the two parties opened a general checking account and a trustee checking account for the use of the practice. The accounts were joint, but one signature was all that was required. If respondent had died, his clients' money would have been in the sole possession of Mr. [A].

While Mr. [A] was working with respondent in the office, he wrote the checks, paid the bills and generally handled the financial affairs. Mr. [A] also handled personal injury claims of clients and negotiated with adjusters. Some of the letters from the office identified Mr. [A] as a paralegal assistant. Other letters would be signed by Mr. [A] giving the indication that he was an attorney.

The understanding between the parties was that Mr. [A] would go to college and then to law school and ultimately become a lawyer partner in the firm.

A written agreement was entered into between respondent and Mr. [A] dated May 13, 1975, and designated Petitioner's Exhibit 3, as identified in the hearing. From that agreement and from the actions of the parties to that agreement, it is evident that a partnership to practice law did exist which included not only the sharing of fees, but also a layman engaging in legal work.

In regard to charge II, the facts appear to be substantially agreed upon. In 1971, Mr. [B] was injured in an industrial accident caused by the negligence of the third party. Mr. [B] employed respondent to represent him in processing a workman's compensation claim and also in the third-party action. Respondent secured an offer for the third-party action which was unsatisfactory to Mr. [B]. Mr. [B] fired respondent and continued the negotiations himself. Respondent came to [city D] to settle the third-party action for $42,500 plus payment by the third-party carrier of certain medical and compensation claims. Respondent was there and received a fee for the subrogation claim.

After the settlement conference, respondent went to the welfare office in [city D] and was told the claim from December 17, 1971, to July 24, 1972, against Mr. [B] and his wife was for $1,773.20. On September 11, 1973, following the settlement conference, Mr. [B] wrote a check to respondent for $1,700 which was replaced by a check on October 29, 1973, in the amount of $1,800. This check was negotiated by deposit on December 18, 1973. In August of 1975, the Department of Public Welfare filed a suit against the [Bs] and on August 27, 1975, respondent entered his appearance for defendants and filed an answer and new matter. Respondent admitted that a sum of $1,800 had been paid to him. The welfare claim had not been paid. In October of 1975, respondent returned $1,800 to Mr. [B] requiring him to file an indemnification agreement. The money deposited in December of 1973, was not kept in respondent's account until reimbursement.

There was a history of violence, criminal charges, threats of suits for partnership fees, a suit

on a bad check and a general feeling of hostility prevailing between the parties.

The hearing committee decided respondent received the $1,800 in order to settle the public welfare claim. The hearing committee found that in regard to charge II, respondent was in violation of D.R. 6-101(A)(3), D.R. 7-101(A)(2), D.R. 9-102(A) and D.R. 9-102(B). No willful violation of D.R. 9-101(B)(4) was found.

Neither respondent nor disciplinary counsel was successful in finding any case law in point with the factual situation present in this case. It appears that there is no adequate precedent to aid in establishing the discipline to be imposed for the violation of D.R. 3-103(A) or D.R. 3-102(A). A number of cases were cited by disciplinary counsel involving improper division of fees with laymen by attorneys, and they were: In re Krasner, Ill., 204 N.E. 2d 10 (1965); Silver v. Goldner, 222 N.S. 2d 854 (1961); In re Kreisel, 263 N.Y.S. 2d 687 (1964); Matter of Gladstone, 229 N.Y.S. 2d 663 (1962); Matter of Silver v. Assael, 208 N.Y.S. 2d 887 (1960). Disciplinary counsel, however, properly distinguishes these cases as being of a type involved with unethical solicitation in addition to the improper division of legal fees with laymen. As disciplinary counsel notes, these cases involve "laymen" or "runners" employed by attorneys who later become the subject of disciplinary charges.

Respondent in his supplemental brief reiterated that the recommendation of the hearing committee for a private reprimand is proper. Disciplinary counsel in its supplemental brief again suggests that respondent be suspended for a short period of time, or at the very least, receive a public censure.

We concur with the hearing committee that the

facts in this case necessitate finding that respondent was guilty of violating D.R. 3-102(A) and D.R. 3-103(A) in that he shared legal fees with a non-lawyer and formed a partnership with a non-lawyer for the practice of law. It is apparent that at the time of entering into the oral and subsequent written agreement there was a close personal relationship and a mutual trust existing between respondent and Mr. [A]. There was a continuing deterioration of that relationship as indicated by the following statement from the hearing committee: "Since the break up there has been violence, criminal charges, threats of suit for partnership fees, a suit on a bad check, and the parties are as personally hostile now as they were once personally close friends."

Respondent knew or should have known that such actions would constitute a violation of the disciplinary rules. It is fundamental that a lawyer cannot form a partnership with a non-lawyer or divide legal fees with a non-lawyer. Whether respondent was guided by the exigencies of the situation or by a belief that no partnership to practice law would exist until Mr. [A] became a lawyer, his actions were wrong and clearly violative of the disciplinary rules.

In Charge II, the board concurs with the findings of the hearing committee that respondent is guilty of violation of D.R. 6-101(A)(3), D.R. 7-101(A)(2), D.R. 9-102(A), D.R. 9-102(B)(3), D.R. 9-102(B)(4) and D.R. 1-102(A)(4), and is not guilty of violation of D.R. 9-102(B)(4). Respondent received money from the [Bs] for a particular purpose, i.e., to be used for the settlement of a public assistance claim of the Commonwealth of Pennsylvania and for the recording of property deeds. Respondent converted

this money to his own use and later refunded it to the [Bs]. He was obviously guilty of the violations charged with the exception of D.R. 9-102(B)(4). The entire series of events which are the subject of these disciplinary proceedings reveal that respondent was acting under emotional instability and permitted friendship to influence his good judgment. Restitution was made to the complainant.

We have carefully considered both the majority and dissenting reports of the hearing committee and are of the opinion that private reprimand by the disciplinary board with or without probation as the board may determine, as recommended by the majority of the hearing committee, would be insufficient under the circumstances.

## III.  RECOMMENDATION

It is the recommendation of the disciplinary board that respondent receive public censure by the Supreme Court pursuant to Rule 204(3) of the Pennsylvania Rules of Disciplinary Enforcement.

Mr. Anderson was absent and did not participate in the adjudication.

## ORDER

EAGEN, *C.J.*, And now, February 1, 1979, the recommendations of the Disciplinary Board of the Supreme Court, dated January 9, 1979, are accepted; and it is ordered, that said [respondent], Esq., be subjected to public censure by the Supreme Court, as provided in Rule 204(3) of the Rules of Disciplinary Enforcement, at the session of this court commencing March 5, 1979, at Pittsburgh.